UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

VALDEZ GLENN,

        Plaintiff,                    Case No. 2:19-cv-234

v.                                          Honorable Paul L. Maloney

UNKNOWN GREENLEAF et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Alger County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Chippewa

County, Michigan. Plaintiff sues URF Correctional Officers Unknown Greenleaf and Unknown Durant, and URF Lieutenant Unknown Bigger.

Plaintiff alleges that on August 11, 2018, he came out to the unit yard for recreation. Defendant Greenleaf shook Plaintiff down while stating "Where are the gambling slips at?" (Compl., ECF No. 1, PageID.7.) When Greenleaf did not find any gambling slips he stated: "I will get your black ass soon watch and see." (*Id.*) Plaintiff then made a verbal complaint to Defendant Bigger regarding Greenleaf's "actions and conduct." (*Id.*) Greenleaf escorted another prisoner to segregation.

Plaintiff proceeded to play basketball on the yard. He took his pants off and placed them on a nearby bench. Greenleaf returned and searched Plaintiff's pants. Greenleaf discovered pills. Greenleaf stated: "I finally got you." (*Id.*) Plaintiff protested that anyone could have planted the pills in his pants. He asked Greenleaf to review the camera footage of the yard, but Greenleaf refused. Greenleaf wrote a Class I misconduct against Plaintiff for substance abuse.

Prisoner Earnest Brooks confessed to putting the pills in Plaintiff's pants. (Brooks Aff., ECF No. 1-1, PageID.14-15.) Brooks does not suggest that any of the Defendants put him up to it. (*Id.*) Greenleaf told Brooks: "I know that Glenn is a drug dealing nigger." (Compl., ECF No. 1, PageID.7.) Plaintiff then made a second verbal complaint about Greenleaf to Defendant Bigger.

Plaintiff asked Bigger to review the camera footage. She refused and instead told Plaintiff she would make sure he got 30 days and a visit restriction. (*Id.*) Plaintiff asked to see a hearing investigator. Defendant Durant served as the investigator. Durant also either refused to look at the video or refused to permit Plaintiff to look at the video. (*Id.*, PageID.8.)

2

Hearing Officer O'Brien conducted a hearing on the misconduct on August 20, 2018. She watched the video. She confirmed that another prisoner walked over to Plaintiff's pants and did something with them. Because the other prisoner may have put the pills in the pants, she could not find that Plaintiff was guilty of the misconduct.

Plaintiff filed a formal complaint with the internal affairs department seeking a criminal inquiry against Defendants Greenleaf and Bigger. Plaintiff filed a grievance against the Defendants as well.[1]

Plaintiff contends that Defendants violated duties spelled out in the MDOC employee handbook and MDOC policy directives. He claims that Defendants also violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff seeks a declaration that Defendants violated his rights as well as compensatory and punitive damages. Plaintiff also asks the Court to direct the MDOC to discharge all three Defendants.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

---

[1] Plaintiff's grievance was rejected at the first step as untimely. (Grievance Rejection Letter, ECF No. 1-6, PageID.25.) It was rejected at the second and third steps for the same reason. (Grievance, ECF No. 1-7, PageID.26; Step III Grievance Decision, ECF No. 1-8, PageID.27.)

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Violations of state-law duties

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendants' alleged failures to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007);

4

*Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

Moreover, to the extent that Plaintiff intended to raise the violations of the MDOC employee handbook or MDOC policy directives as state law claims, the Court will not consider them. For the reasons set forth below, all of Plaintiff's federal claims are properly dismissed. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993). As set forth below, none of Plaintiff's federal claims survive initial review under 28 U.S.C. § 1915(e). The balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, the Court declines to exercise jurisdiction over such state law claims. Accordingly, those claims will be dismissed without prejudice.

### IV. First Amendment

Other than listing the constitutional amendments that Defendants allegedly violated, Plaintiff does not explain his claims. Although the First Amendment guarantees several rights, it appears that Plaintiff's First Amendment claim is for retaliation: one or more Defendants retaliated against him for his verbal complaints to Defendant Bigger about Defendant Greenleaf. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

5

set forth a First Amendment retaliation claim, a plaintiff must establish that: (A) he was engaged in protected conduct; (B) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (C) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Protected conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Here, Plaintiff filed a formal administrative grievance. That grievance, however, was filed weeks after the conduct of which Plaintiff complains. That grievance could not have prompted the conduct which Plaintiff claims was retaliatory.

6

Plaintiff made two oral complaints. Plaintiff voiced the first complaint to Defendant Bigger because Defendant Greenleaf shook Plaintiff down for "gambling slips" and then told Plaintiff he would "get [his] black ass . . . ." (Compl., ECF No. 1, PageID.7.) Plaintiff then made a second oral complaint to Bigger that Greenleaf: (1) retaliated against Plaintiff for filing the first complaint; and (2) called Plaintiff a "dope-dealing nigger" and a "black asshole." (*Id.*) Accordingly, for purposes of this preliminary review, Plaintiff has adequately alleged protected conduct.

### B. Adverse action

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the Defendants' conduct is "*capable of deterring a person of ordinary firmness*"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Thus, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter . . . ." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). Certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

The Sixth Circuit's analysis in *Reynolds-Bey* is instructive:

> Here, Reynolds-Bey alleges that Kingsbury searched him (either once or twice in quick succession) and used a racial slur and a thinly-veiled threat in retaliation for Reynolds-Bey's protected conduct. Although this is a close issue, we find that the

7

> alleged events could constitute action sufficient to deter a prisoner of ordinary firmness from engaging in protected activities in the future. A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard. *See Tate*, 85 F. App'x at 417. Here, however, Reynolds-Bey further asserts that Kingsbury "use[d] . . . racial threats to advocate physical violence." (Pro Se Appellant Br. 9.) Although the alleged threats of violence or other retaliation were not explicit, the words Reynolds-Bey attributes to Kingsbury can be construed as an implicit, and nontrivial, threat. First, the use of racial slurs by an individual in a position of authority is repugnant and often carries with it an implicit threat of violence. *Cf. Ward v. Washington Mut.*, No. 03 C 3566, 2004 WL 2534628, at *3 (N.D. Ill. Sept. 30, 2004) (in workplace racial discrimination claim, noting that the use of "odious [racial] epithets . . . reasonably could have conjured up disturbing episodes from our society's checkered history of inter-racial relations"). Second, Kingsbury's alleged statements that Reynolds–Bey "will always stay on my list" (Am. Compl. ¶ 27) and that "Reynolds was the one" (Grievance No. OTF-04-06-0361-18B), as well as his purported reference to the district court decision mentioning Kingsbury (Am. Compl. ¶57(b)), could reasonably be interpreted by a person of ordinary firmness as a serious threat-particularly when coupled with the dining hall searches.

*Reynolds-Bey*, 428 F. App'x at 503-04. Although Greenleaf's actions were not quite as egregious as Kingsbury's, it appears that Greenleaf's actions might also have been interpreted as a serious threat and, therefore, at least for purposes of this preliminary review, might suffice as adverse actions to support a retaliation claim.

Plaintiff's allegations of adverse action by Defendants Bigger and Durant, however, fall short. Plaintiff alleges only that Bigger and Durant refused Plaintiff's request to view the security video. Neither Bigger nor Durant, however, were charged with conducting Plaintiff's misconduct hearing—O'Brien was. And, O'Brien watched the video and found Plaintiff not guilty. Plaintiff alleges no facts from which the Court might infer that the inaction of Bigger or Durant rises to the level of adverse action that might deter a person of ordinary firmness.

### C. Retaliatory motive

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff's allegations do not support his conclusory claim that Defendants' actions were retaliatory. With regard to Defendant Greenleaf, the initial shakedown, racial slur, and threat preceded any protected conduct and, therefore, could not have been motivated by such protected conduct. Certainly, there is temporal proximity between the first complaint and the second shakedown. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, however, Plaintiff fails to allege any facts to show that Greenleaf was even aware of Plaintiff's oral complaint. Moreover, Plaintiff alleges that Greenleaf was out to get Plaintiff even before Plaintiff filed a complaint, entirely undercutting the inference that the intervening complaint motivated the second shakedown simply because the former occurred before the latter.

Plaintiff's allegations of a retaliatory motive underlying the inactions of Defendants Bigger and Durant are also conclusory. Indeed, Plaintiff alleges no facts to support an implicit claim that Durant was even aware of Plaintiff's oral complaints to Bigger about Greenleaf. Therefore, those complaints could not have motivated Durant.

Moreover, with respect to Defendant Bigger, Plaintiff alleges nothing more than her refusal to respond to his complaints about Greenleaf. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In short, Plaintiff has failed to allege a viable First Amendment retaliation claims against any of the Defendants.

### V. Fifth Amendment and Fourteenth Amendment due process

Plaintiff contends that Defendants' conduct violated his Fifth and Fourteenth Amendment rights, presumably his due process rights. The Fourteenth Amendment and Fifth Amendment protect an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the

State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiff has not specifically alleged that he was deprived of life, liberty, or property by virtue of Defendants' actions or inactions. Moreover, at least with respect to the misconduct report at the heart of his complaint, he cannot make such a claim because none of those interests were at stake in the disciplinary proceeding.

To the extent a disciplinary sanction affects the duration of the prisoner's sentence, he is entitled to the protections of due process. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). But, no sanction that might have followed a finding of guilt on the misconduct here would have affected the duration of Plaintiff's sentence. Plaintiff committed his crimes after December 15, 1998; therefore, he is not eligible for "good time" credits nor is he eligible for disciplinary credits that, possibly, could impact the duration of his sentence. Instead, Plaintiff is a prisoner "subject to disciplinary time." Mich. Comp. Laws §§ 800.33, 800.34; MDOC Policy Directive 03.01.105 (eff. July 10, 2017).

Disciplinary time accumulates for major misconduct convictions. Mich. Comp. Laws § 800.34; MDOC Policy Directive 03.01.105 (Eff. July 10, 2017). But, such an accumulation would not affect the duration of Plaintiff's sentence as contemplated by *Sandin*. In *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system that resulted in the accumulation of disciplinary time does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *see also Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Thus, even if Plaintiff accumulated disciplinary time for the misconduct, that sanction would not warrant due process protections.

11

A prison disciplinary sanction may also implicate the protections of due process if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484. The sanctions Plaintiff faced were up to 10 days in punitive segregation or up to 30 days' toplock and up to 30 days' loss of privileges. He did not actually suffer any sanction. Nonetheless, such penalties do not rise to the level of an atypical and significant hardship. Indeed, the *Sandin* court concluded that thirty days in segregation, a far more restrictive penalty, was not so severe a sanction that due process protection was warranted. *Id.* at 484-86; *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) ("14-day loss of privileges did not deprive him of a protected liberty interest . . . ."); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("The sanction imposed for Alexander's misconduct charge—thirty days' loss of privileges—did not implicate a protected liberty interest . . . ."); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan 24, 2017) ("[T]hirty-day loss of privileges . . . does not amount to an 'atypical and significant hardship.'").

Because Plaintiff was not deprived of any protected liberty interest, he has failed to state a claim for violation of his due process rights.

## VI. Cruel and unusual punishment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff contends that Defendants violated his Eighth Amendment rights. He does not specify how. It simply cannot be argued that the failures of Defendants Bigger and Durant to look at the security video unnecessarily and wantonly inflicted pain or deprived Plaintiff of the minimal civilized measure of life's necessities. Plaintiff, therefore, has failed to state an Eighth Amendment claim against Defendants Bigger and Durant.

Plaintiff's claim that Defendant Greenleaf used derogatory racial slurs and shook Plaintiff down twice also fail to state a claim. An allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. Cty. of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Similarly, Plaintiff's claim that Defendant Greenleaf conducted two shakedowns does not implicate the Eighth Amendment. Shakedowns are an ordinary and necessary incident of prison life. *Hudson v. Palmer*, 468 U.S. 517, 526-30 (1984). The garden-variety shakedowns alleged by Plaintiff are neither cruel nor unusual.

In light of the foregoing, Plaintiff fails to state a claim for a violation of the Eighth Amendment.

### VII. Equal protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Although Plaintiff alleges that Defendants treated him poorly, he does not allege that he was treated differently on the basis that he is a member of a suspect class or otherwise. Absent such allegations of disparate treatment, Plaintiff has failed to state an equal protection claim. Moreover, allegations of verbal harassment and abusive language do not give rise to an equal protection claim. *Jones v. Porter*, No. 99-1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level.") (citing *Ivey v.*

14

*Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *Price v. Lighthart*, No. 1:10-cv-265, 2010 WL 1741385, at *2 (W.D. Mich. Apr. 28, 2010) (finding that an allegation that a prison official used racial slurs, standing alone, does not violate the Fourteenth Amendment's guarantee of equal protection) (citing *Williams v. Kaufman Cty.*, 352 F.3d 994, 1013 & n.61 (5th Cir. 2003)). Plaintiff's complaint contains no allegations that Plaintiff was subjected to a denial or deprivation in violation of the Equal Protection Clause. As a result, the complaint fails to state a claim for violation of the Equal Protection Clause.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 17, 2019 /s/ Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　United States District Judge